**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Rosciano,<br><br>                    Plaintiff,<br><br>v.<br><br>Experian, et al.,<br><br>                    Defendants. | No. CV-14-02102-PHX-NVW<br><br>**ORDER** |

Before the Court are Defendant T-Mobile USA, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Claims (Doc. 13), the Response (Doc. 31) and the Reply (Doc. 35). The Motion will be granted.

**I.     BACKGROUND**

On October 16, 2011, Plaintiff purchased two phones and accompanying phone service at Defendant's Tempe retail store. The service agreement Plaintiff signed that day ("Agreement") includes a provision stating that "**[Defendant] requires ARBITRATION of disputes UNLESS I OPT-OUT WITHIN 30 DAYS OF ACTIVATION**" and referring Plaintiff to Defendant's "Terms and Conditions for details." Doc. 35-1 at 5 (emphasis in original). The Agreement also notes that it "includes … [Defendant's] 'Terms and Conditions,'" which can be obtained either in the store or on Defendant's website. *Id.* In addition, Defendant asserts in its Motion that the "Terms and Conditions are included in the box with every wireless phone sold for use on [Defendant's] network, including the phones sold to Plaintiff." Doc. 13 at 4. According

1  to Defendant, the boxes containing Plaintiff's phones were sealed with a sticker—which
2  Plaintiff would have had to break in order to retrieve the phones—that warns,
3  "IMPORTANT Read the enclosed T-Mobile Terms & Conditions. By using T-Mobile
4  service, you agree to be bound by the Terms & Conditions, including the mandatory
5  arbitration and early termination fee provisions." *Id.* at 3-4. Although Plaintiff disputes
6  it, Doc. 31 at 2, Defendant claims Plaintiff used his new phone service, Doc. 16 at 4,
7  thereby reaffirming his acceptance of the Terms and Conditions.

8  Numbered paragraph two of those Terms and Conditions reads, "**WE EACH
9  AGREE THAT, EXCEPT AS PROVIDED BELOW (AND EXCEPT AS TO
10 PUERTO RICO CUSTOMERS), ANY AND ALL CLAIMS OR DISPUTES IN
11 ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR
12 SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING
13 DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION, RATHER
14 THAN IN COURT.**" Doc. 16-1 at 3 (emphasis in original). The Terms and Conditions
15 stipulate that the Agreement "affects interstate commerce so that the Federal Arbitration
16 Act and federal arbitration law apply." *Id.* Two paragraphs farther down, the Terms and
17 Conditions announce that, "Notwithstanding the above, **YOU MAY CHOOSE TO
18 PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION** if: … (b)
19 **YOU OPT OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS
20 FROM THE DATE YOU ACTIVATED SERVICE FOR THE RELEVANT LINE.**"
21 *Id.* (emphasis in original). It is undisputed that Plaintiff never opted out of Defendant's
22 arbitration scheme.

23 Plaintiff alleges that after discovering the new phones could not receive service at
24 his home, he attempted to return the phones and cancel his service. Doc. 1 at 2. When
25 Defendant informed Plaintiff that returning the phones would incur a restocking charge,
26 leaving him with only a $23 refund, Plaintiff opted instead to keep the phones but cancel
27 the service. *Id.* Defendant allegedly informed Plaintiff it could only cancel his service if
28 he returned the phones as well. *Id.* at 2-3. Plaintiff proceeded to keep the phones,

reinstate service with his previous carrier and decline to pay for Defendant's service. *Id.* at 3. As a result, Defendant made a negative report on Plaintiff's credit, which allegedly led to a reduction in his credit score. *Id.*

Plaintiff filed this action on September 23, 2014, seeking damages from Defendant T-Mobile USA, Inc., as well as several other Defendants who are not party to the instant Motion. The Complaint (Doc. 1) charges Defendant with violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., although it is not clear from the Complaint what actions Defendant took that violated the FCRA.[1] Regardless, Defendant filed its Motion on October 24, 2014, asking the Court to compel the parties to submit to arbitration and either dismiss the Complaint or stay the remainder of the case in the interim.

**II.   ANALYSIS**

The Federal Arbitration Act ("FAA") provides that a "written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party to such an arbitration clause files

---

[1] The Complaint's "First Cause of Action" accuses "defendant credit reporting service" of five separate FCRA violations. Doc. 1 at 3-4. In the "Second Cause of Action," Plaintiff alleges that "Defendant user willfully and/or negligently violated the provisions of the Act" in four respects, but he does not explain to which party "Defendant user" refers. *Id.* at 4. The statutory citations in this section of the Complaint proscribe certain conduct on the part of credit reporting agencies. *See* 15 U.S.C. § 1681d(a)(1). Elsewhere in the First Cause of Action, Plaintiff writes that Defendant's restocking charge is "not announced as to dollar amount in the [Defendant's] contract" and is "absolutely unreasonable in amount given the size of the initial transaction." Doc. 1 at 2. Thus Plaintiff appears to be making out some kind of fraud or consumer-protection violation, rather than an FCRA violation. Finally, the First Cause of Action also asserts, in the midst of the Complaint's recitation of facts, that Defendant's "tying of the phone purchase to the phone service was and is illegal under the law." *Id.* at 3. No citation to statute or case law accompanies this assertion.

suit in federal district court, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3. The Supreme Court "ha[s] described [§ 2] as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citations and internal quotation marks omitted). "The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748.

Here, the Terms and Conditions governing Plaintiff's contract with Defendant stipulate that the parties' Agreement "affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply." Doc. 16-1 at 3. Plaintiff does not appear to contest that his transaction with Defendant "involve[ed] commerce," 9 U.S.C. § 2, and there is nothing before the Court to suggest the Agreement should be pulled outside the scope of the FAA on that basis. Whatever the nature of Plaintiff's claim against Defendant, it undeniably "relate[s] to or concern[s] the Agreement" or Defendant's "services, devices or products." Doc. 16-1 at 3 (emphasis omitted). It is therefore covered by the Agreement. In his Response, Plaintiff argues that the Declaration (Doc. 16) submitted by Defendant's custodian of records "does NOT say that any contract obliging arbitration was signed, or made known to plaintiff at the time of purchase of rescission." Doc. 31 at 2 (emphasis in original). But whether the custodian alleges this fact or not is irrelevant, as Defendant has filed with the Court a copy of the Agreement that Plaintiff signed on October 16, 2011. *See* Doc. 35-1. Even if Plaintiff's subsequent breaking of the seals on his phone boxes does not evidence consent to Defendant's Terms and Conditions—an issue the Court does not reach—his signature on the Agreement is sufficient to establish that he agreed to submit to arbitration any disputes with Defendant.

The conclusion that Plaintiff's claim is subject to the Agreement and to the FAA does not end the inquiry. "The final phrase of § 2 … permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Concepcion*, 131 S. Ct. at 1746 (citations omitted). Plaintiff suggests the "arbitration contract could be said … to be a clause of adhesion" because he "did not the get [sic] or see the box with the warning label until AFTER the contract of sale was concluded with payment." *See* Doc. 31 at 3 (emphasis in original). The Court construes this argument as a contention that the arbitration clause is unconscionable, and therefore unenforceable. Because, as explained above, Plaintiff's consent to arbitrate derives from his signing of the Agreement, rather than his opening of the boxes, this argument must fail. Moreover, unlike a typical take-it-or-leave-it contract of adhesion, the Agreement signed by Plaintiff gave him the opportunity to retain the benefits of his phone service even after opting out of the arbitration provision. Plaintiff declined to do so. Finally, "it does not appear that there is any Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability. ... The fact that a given contract was a contract of adhesion is not itself dispositive, but relates to [the procedural unconscionability] factor about 'whether alterations in the printed terms were possible.'" *Perry v. NorthCentral Univ., Inc.*, No. CV-10-8229-PCT-PGR, 2011 U.S. Dist. LEXIS 106051, at *14-15 (D. Ariz. Sept. 19, 2011) (alterations in original) (citation and internal quotation marks omitted). Plaintiff offers no reason to believe that the Agreement should be found unconscionable.

When, as here, they are "satisfied that the issue involved in [a] suit or proceeding is referable to arbitration under … an agreement," the FAA directs courts to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In this case, the Terms and Conditions provide that if Plaintiff is aggrieved, he "must send a letter requesting arbitration and describing [his] claim to

[Defendant's] registered agent … to begin arbitration." Doc. 16-1 at 3. Any dispute so submitted will be arbitrated by the American Arbitration Association, in accordance with either the AAA's Supplementary Procedures for Consumer-Related Disputes or the AAA's Commercial Arbitration Rules, depending on the amount in controversy. *Id.* The Court will therefore "stay the trial of th[is] action until" Plaintiff has had an opportunity to pursue arbitration as described in the Terms and Conditions. 9 U.S.C. § 3.

IT IS THEREFORE ORDERED that Defendant T-Mobile USA, Inc.'s Motion to Compel Arbitration and Dismiss or Stay Claims (Doc. 13) is granted. This action will be stayed until Plaintiff has exhausted his arbitration remedy. If Plaintiff does not commence arbitration proceedings by February 20, 2015, this action will be dismissed as against Defendant T-Mobile USA, Inc.

Dated this 19th day of December, 2014.

Neil V. Wake
United States District Judge